**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

December 12, 2012

# In the Court of Appeals of Georgia

A12A2113. DILLARD v. THE STATE.

A12A2114. DILLARD v. THE STATE.

ELLINGTON, Chief Judge.

After a hearing, the Superior Court of Murray County revoked portions of the probated sentences Joseph Dillard received on two separate burglary convictions.[1] Pursuant to a granted application for discretionary appeal, Dillard appeals, contending that the trial court erred in admitting into evidence photographs from a Facebook profile that appeared to show him holding a shotgun and that the evidence was insufficient to revoke his probation. For the reasons that follow, we remand.

---

[1] Except for their underlying criminal case numbers, the revocation orders are identical. Because the appeals concern identical issues and arise from a single revocation hearing, we consolidate them.

"A court may not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged."OCGA § 42-8-34.1 (b). Generally, "[t]his court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court." (Citation omitted.) *Gray v. State*, 313 Ga. App. 470, 471 (722 SE2d 98) (2011). However, we review questions of law de novo. *White v. State*, 274 Ga. App. 805 (619 SE2d 333) (2005).

The record shows that in January 2012 an investigator with the Murray County Sheriff's Office saw photographs on the Facebook profile of "Joe Dirty Deedse" that appeared to depict Dillard, whom the investigator confirmed was then on probation, holding a shotgun. The investigator contacted Dillard's probation officer and learned that the probation officer was in the process of trying to locate Dillard in order to have him arrested for violating the conditions of probation under his two burglary convictions, specifically, by failing to report to the probation officer as directed and by changing his residence without the probation officer's permission. Based on interviews with Dillard's friends and information obtained from the "Joe Dirty Deedse" Facebook profile, the investigator determined that Dillard might be found

at the home of John Knipp. When the investigator and Dillard's probation officer went to the Knipp residence, they found Dillard alone in a bedroom with a shotgun propped beside the door; the investigator arrested Dillard. The State then filed a petition for revocation of probation in each case, alleging that Dillard had violated the terms of his probation by committing the offense of possession of a firearm by a convicted felon, a violation of OCGA § 16-11-131 (b). At the combined hearing on the two revocation petitions, the investigator testified about the circumstances leading to Dillard's arrest, and the trial court admitted the shotgun that was near him when he was arrested. In addition, the trial court admitted, over objection, the Facebook profile photographs that apparently depicted Dillard holding the same shotgun.

At the conclusion of the hearing, the prosecutor, without referring to any other basis for revoking Dillard's probation, argued simply, "here he was in the same room with this weapon at the time of his arrest and he was a convicted felon. Case closed." The trial court stated, "[t]he Court will find that he has violated his probation as alleged [in the petitions]." The written revocation orders, however, state only that the trial court found that Dillard violated the conditions of his probation in each case by his unauthorized change of residence and by his failure to report to his probation officer as directed.

It is well settled that

> [d]ue process requires that a defendant be given written notice of the claimed violation of his probation prior to [a probation] revocation hearing. In addition, in order to revoke the probationary features of a sentence the defendant must have notice and opportunity to be heard, the notice being sufficient to inform him not only of the time and place of the hearing and the fact that revocation is sought, but the grounds upon which it is based. It may not be revoked where there is no evidence that the defendant violated its terms in the manner charged in the notice, even though there be evidence at the hearing that the defendant violated the terms of probation in some other manner as to which there was no notice given. Likewise, if a judgment is based upon an offense not charged in the petition for revocation, it must be reversed.

(Citations and punctuation omitted.) *Kitchens v. State*, 234 Ga. App. 785, 787-788 (2) (508 SE2d 176 ) (1998). In this case, the judgments as entered appear to have been based upon violations that were not charged in the State's petitions for revocation of probation. Dillard's claims of error on appeal, however, are premised on his understanding that the court's final, written orders contained a "scrivener's error" and that the court revoked his probation based upon a finding that he had possessed a firearm in violation of OCGA § 16-11-131 (b) as alleged in the State's revocation petitions. Similarly, the State maintains that the court found by a preponderance of

4

the evidence that Dillard violated the terms of his probation by the commission of the offense of possession of a firearm in violation of OCGA § 16-11-131 (b) and addresses his arguments on the merits. Given the discrepancies among the allegations of the petition, the trial court's oral announcement of its decision, the parties' understanding of the trial court's ruling, and the written judgments, we cannot ascertain the true basis for the revocation of Dillard's probation. Because this doubt thwarts our consideration of Dillard's appellate arguments, we deem it appropriate to remand the instant case to the trial court for clarification. See *Brown v. State*, 167 Ga. App. 473, 474 (306 SE2d 728) (1983) (Where a probation revocation petition alleged that the appellant had violated the terms of his probation by committing the offense of rape, where the trial court orally announced that it found that there was evidence that the appellant either committed rape or some other offense, and where the written order stated only that the appellant's probation was being revoked for the reason "as set forth in [the] petition," the actual basis for the revocation of appellant's probation remained in doubt, necessitating a remand of the case for the entry of a written definitive statement as to the reasons why the appellant's probation had been revoked.).

*Cases remanded. Phipps, P. J., and Dillard, J., concur.*

5